**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| JOSIAH GOTTSCHALL | : IN THE SUPERIOR COURT OF |
| | : PENNSYLVANIA |
| Appellant | : |
| | : |
| | : |
| | : |
| v. | : |
| | : |
| | : |
| | : |
| KELLY WOODLEY | : No. 81 MDA 2026 |

Appeal from the Order Entered December 23, 2025
In the Court of Common Pleas of Lycoming County Civil Division at
No(s): FC-2025-20045-CU

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY KUNSELMAN, J.: **FILED: JULY 9, 2026**

Josiah Gottschall (Father) appeals *pro se* from the custody order entered by the Lycoming County Court of Common Pleas, which reduced his custodial time with his now one-and-a-half-year-old daughter, D.W. (the Child). The order granted Father and Kelly Woodley (Mother) shared legal custody of the Child. It also granted Mother primary physical custody, and Father supervised partial physical custody for two hours every other Saturday in a public place. Additionally, the order removed one of the previously approved supervisors for Father's custodial time. After review, we affirm.

The trial court provided the following factual and procedural history:

> Father commenced this action by complaint for custody on January 15, 2025 (the "Complaint"). Father alleges that he is the father of [the Child] who was then in custody of [Mother]. Father and Mother were not married. Father sought shared physical custody of the Child, contending that the Child's best interest and permanent welfare will be

served by granting the relief sought because Father is the Child's father.

On January 28, 2025, Mother here filed a petition for protection from abuse [(PFA)] against Father. Mother alleged Father came to a third party's home where Mother was visiting and became irate when he saw someone else holding the Child. He threatened to punch Mother but finally left the residence, although he continued driving around outside of the property. She also alleged he previously was mentally, emotionally, verbally and physically abusive toward Mother and aggressive toward her relatives. She contended he has a history of breaking and kicking items in the house and broke her finger during one altercation.

On February 11, 2025, following a hearing, the court entered a final Protection from Abuse Order which, *inter alia*, granted temporary primary physical custody of the Child to Mother. Father was allowed supervised visitation of the Child by Lycoming County Children and Youth Services ("CYS"), at such times as CYS could arrange. The Protection from Abuse Order specifically stated that its custody provisions were temporary and that either party could initiate custody proceedings.

In the instant custody proceeding, the court held a *Kayden's Law* hearing on April 29, 2025, following which the court entered two Orders on May 2 and 7, 2025 finding that "it is in the best interests of the Child that all visitation between Father and the Child be supervised" and approving two supervisors [Mother's sister, Ms. Snyder and Father's friend, Mr. Horning]. After extensive pretrial litigation, the court held a custody trial on December 22, 2025. The court evaluated the factors to consider when awarding custody and entered an Order on December 23, 2025 which, among other things, (i) awarded shared legal custody of the Child; (ii) awarded primary physical custody to Mother; (iii) provided that Father shall have only supervised physical custody of the Child for two hours every other Saturday in a public place; (iv) reduced Father's visitation time; (v) removed one of the previously approved supervisors [Mr. Horning]; and (vi) provided various guidelines and instructions to the parties.

> Father filed his notice of appeal of the court's December 23, 2025 order on December 30, 2025. Subsequent to an Order entered by the Superior Court on January 16, 2026, Father filed his concise statement of matters complained of on appeal on January 21, 2026.

Trial Court Opinion (T.C.O.), 2/10/25, at 1-4 (footnotes omitted; several stylistic and naming convention changes made).

Father raises the following five issues for our review, which we reorder for ease of disposition:

1. Did the trial court err or abuse its discretion by making findings of physical abuse when there was no credible, independent, or current evidence to support such findings?

2. Did the court err by further limiting Father's access and time with his daughter despite Father's full compliance with all court-ordered requirements?

3. Did the court fail to consider the best interest of the Child and the evidence of positive, incident-free prior parenting time before severely restricting Father's rights?

4. Did the court err in excluding a neutral supervisor and relying exclusively on the Mother's sister, rendering all supervision potentially biased?

5. Did the trial court's use of personal and emotional language ("terrifies me") demonstrate bias or an abuse of judicial discretion, warranting reversal or remand?

Father's Brief at 3-4 (unnumbered) (naming conventions altered).

Before addressing Father's issues, we note that Father's failure to comply with many of our Appellate Rules has impeded our review of his appeal. First, not all of Father's above issues clearly align with the issues he raised in his Appellate Rule 1925(b) concise statement. Specifically, his

- 3 -

second and fifth issues above are not included in his concise statement. It is well-settled that issues not included in a concise statement are waived. **See** Pa.R.A.P. 1925(b)(4)(vii). Father attempted to include a catch-all issue in his concise statement that specified, "Any additional errors revealed in the pending transcript of proceedings that further support Appellant's stated grounds for appeal." Statement of Errors Complained of on Appeal, at 1 (unnumbered). To the extent that Father's issues are suggested by errors included in his concise statement and were addressed by the trial court, we will consider them. Otherwise, any issue not raised in Father's concise statement is waived. **See** Pa.R.A.P. 1925(b)(4)(vii).

Next, Father's brief contains substantial defects. The section of Father's brief labeled as "argument" consists of four pages, with five paragraphs lettered A through E. Father's Brief at 6-9 (unnumbered). Four of these paragraphs seemingly align with four of the issues listed above; one paragraph appears to raise an additional issue.

Moreover, the paragraphs of Father's argument section are not appropriately developed with legal authority and cohesive, persuasive argument. **See** Pa.R.A.P. 2119(a)-(c). Thus, we would have cause to find these issues waived due to lack of development. **See B.S.G. v. D.M.C.**, 255 A.3d 528, 535 (Pa. Super. 2021) (citation omitted). However, in the interest of judicial economy, and because we understand that Father is challenging the custody order, we will review his properly raised issues to the extent possible.

After the argument section, Father's brief contains a "rebuttal to trial court opinion" section, which lists twelve problems he has with the court's opinion. *See* Father's Brief at 9-17 (unnumbered). For the most part, Father did not properly raise these issues in his Rule 1925(b) statement or his statement of the questions involved in his brief. *See* Pa.R.A.P. 1925(b)(4)(vii); Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); *In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa. Super. 2017) (It "is well-settled that issues not included in an appellant's statement of questions involved and concise statement of errors complained of on appeal are waived." (citation omitted)). Each of these issues has one paragraph or less of argument, and, again, Father failed to adequately develop these issues with citations to the record or legal authority to support his contentions. *See* Pa.R.A.P. 2119(a); *B.S.G., supra*. Thus, he has waived these issues, and we will not consider them. *See M.Z.T.M.W., supra*; *B.S.G., supra*.

Furthermore, Father's reply brief is fifty-two pages, with an additional appendix. Yet, it does not contain the required certification that the brief complies with the 7,000-word limitation. Pa.R.A.P. 2135(a)(1), (d); *see also* Pa.R.A.P. 2113(a). The reply brief purports to "address the factual inaccuracies and legal arguments raised in" Mother's brief "and to clarify points of the record that were misrepresented or inadequately considered by the trial court." Father's Reply Brief at 1-2.

However, in contravention of our Appellate Rules, Father's reply brief also raises additional issues and arguments that Father did not raise in his principal brief or to the trial court and are not in response to Mother's brief. *See* Pa.R.A.P. 2113(a), Comment ("The scope of the reply brief is limited, however, in that such brief may only address matters raised by appellee and not previously addressed in appellant's brief."). Some of the issues in Father's reply brief relate to other petitions and motions not currently before this Court in this appeal. Father cannot attempt to raise new issues, or issues with other orders, for the first time in his reply brief. *See* Pa.R.A.P. 2113(a); *Bishops, Inc. v. Penn National Insurance*, 984 A.2d 982, 997 (Pa. Super. 2009) (explaining Rule 2113 "does not sanction the use of Reply Briefs to raise new issues." (citation omitted)). *Commonwealth v. Fahy*, 737 A.2d 214, 218 n.8 (Pa. 1999) ("Thus, an appellant is prohibited from raising new issues in a reply brief. Moreover, a reply brief cannot be a vehicle to argue issues raised but inadequately developed in appellant's original brief." (citations omitted)).

We remind Father that his *pro se* status does not relieve him of his obligation to adhere to our Rules. "Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant." *Commonwealth v. Vurimindi*, 200 A.3d 1031, 1037 (Pa. Super. 2018) (citation omitted). "To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." *Id.* at 1037-38 (citation omitted). Moreover, this Court will not act

as an advocate or develop arguments on behalf of Father. *See Interest of R.H.*, 320 A.3d 706, 716 (Pa. Super. 2024). Nor will we scour the record to find evidence to support Father's argument. *See Milby v. Pote*, 189 A.3d 1065, 1079 (Pa. Super. 2018) (citation omitted). We will only address the issues that Father has properly preserved, raised, and argued in this appeal.

Since bringing this appeal, Father has filed a series of motions and petitions with the trial court and this Court. Beginning on January 2, 2026, three days after Father filed this appeal, and continuing through at least April 2026, Father filed many petitions or motions with the trial court related to the custody order on appeal, along with requests for recusal and a contempt petition. Many of these petitions and motions related to the custody order requested that the trial court grant Father "emergency relief" by essentially modifying the instant order and increasing Father's custodial time. Many of them also lambasted the trial court's "delays" and continuances in the case.

The trial court held a hearing on March 6, 2026 related to some of these filings. It denied Father's recusal motion and stayed Father's other custody-related motions/petitions pending the outcome of this appeal. The court explained to Father, in two separate opinions, that it lacked jurisdiction to modify the instant custody order, while Father's appeal was pending.

In addition to the above documents, Father also filed two supplemental concise statements of errors complained of on appeal. In the first, filed with this Court in April 2026 as a "supplemental" statement of matters complained of on appeal and "notice of federal civil rights concern," Father discussed the

trial court's jurisdiction and recusal decisions. He claimed that a combination of factors "may potentially rise to a conspiracy to deprive" him of his "constitutional and federal rights." In the second, Father attempted to add an additional issue to the current appeal by requesting that this Court review the trial court's denial of his motion for recusal "as error and assignment of bias."

On June 8, 2026, Father also filed an "Application for Interim Relief Pending Appeal" with this Court, requesting that we restore or increase his visitation with the Child while this appeal was pending. On June 24, 2026, Father filed an "Emergency Motion to Expedite Decision – Demand for Immediate Court Action" with this Court, demanding that we immediately render our decision in this appeal.

Father's voluminous filings following his appeal make clear that he misunderstands this case's current procedural posture and the effect that bringing an appeal had on this case. Thus, we clarify that the trial court is correct that once Father filed his appeal, the court was generally divested of jurisdiction to "proceed further in the matter," pursuant to Appellate Rule 1701. Pa.R.A.P. 1701(a). Rule 1701 provides a list of actions a trial court can take while a case is on appeal, including, but not limited to: preserving the *status quo*; correcting formal errors in papers; taking actions related to the record; granting leave to appeal *in forma pauperis*; granting *supersedeas*; enforcing an order; or granting reconsideration. **See** Pa.R.A.P. 1701(b). However, since Father did not file a timely and proper motion for reconsideration with the trial court, the court was not permitted by our

Appellate Rules to modify the December 23 custody order, once that order was final and on appeal to this Court. Thus, the trial court properly stayed Father's motions for special relief, which essentially requested that the court modify its decision and increase Father's custodial time, pending the outcome of this appeal.

Moreover, we remind Father that the only filing before us in this appeal is the December 23, 2025 final custody order. If there were other prior interlocutory orders that became final when the trial court entered the December 23 order, and Father wanted to appeal those orders, Father needed to make that clear to us in his Appellate Rule 1925(b) statement, and principal brief, and he failed to do so.

Similarly, the various petitions and motions Father filed with the trial court after taking this appeal are not properly before us here either, as they occurred after Father filed this appeal. This includes the trial court's decision to deny Father's motion for recusal; it is not properly before us in this appeal because it occurred after the December 23 final order was entered and appealed. **See Krieg v. Krieg**, 743 A.2d 509, 511 (Pa. Super. 1999) (explaining that a pre-trial motion to recuse a judge from further proceedings is not a final order or an interlocutory or collateral order that is immediately

appealable).[1]   Our review of this appeal is focused only on the December 23

final custody order.

Having clarified the proper scope of Father's appeal, we turn to its

merits.  We begin with our well-settled standard of review for custody matters:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion.  We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations.  In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.  However, we are not bound by the trial court's deductions or inferences from its factual findings.  Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record.  We may reject the conclusions of the trial court only if they involve an error of law, or are

---

[1] ***Krieg*** involved a father's appeal from a trial court order denying his motion for recusal.  743 A.2d at 510.  The father brought his recusal motion after the court had entered a final custody order, which was the subject of a separate appeal.  ***Id.***  The father filed a recusal motion seeking to prevent the trial court judge from presiding over any subsequent custody proceedings.  ***Id.*** at 511.  The court denied the motion, and the father appealed.  ***Id.***  This Court acknowledged that the recusal motion was not filed in connection with a pending custody matter, and instead it appeared to be filed in anticipation of further custody proceedings.  ***Id.*** at n.3.  The Court noted that, at first blush, it appeared that the recusal motion was not technically a pre-trial motion and that it disposed of all claims since no other action was pending.  ***Id.***  However, the Court concluded that a recusal motion such as the one in ***Krieg*** "should be treated as a pre-trial motion for the purposes of appeal" and that "a motion to recuse may be reviewed only after an underlying action is filed and has been decided."  ***Id.***  Thus, following this Court's decision in ***Krieg***, we will not consider the trial court's denial of Father's recusal motion in this appeal.  Father will have the opportunity to appeal that decision, if he so chooses, when another underlying custody action is filed and has been decided, resulting in an appealable final order.

> unreasonable in light of the sustainable findings of the trial court.

*Wilson v. Smyers*, 284 A.3d 509, 515 (Pa. Super. 2022) (citation omitted). Importantly, it is not this Court's role to "re-find facts, re-weigh evidence, and re-assess credibility." *Id.* at 520 (citation omitted). Further, the "evidentiary record of a custody appeal will often support a conclusion different than the one reached by the lower court." *White v. Malecki*, 296 A.3d 1210, 1215 (Pa. Super. 2023); *see also Carrero v. Lopez*, 300 A.3d 494, 501 (Pa. Super. 2023) ("In a custody appeal, the sheer fact that a trial court could have found for the appellant is not a sufficient basis to reverse the court's decision.").

In a custody-related matter, the court's "paramount concern is the best interests of the" child involved. *A.L.B. v. M.D.L.*, 239 A.3d 142, 148 (Pa. Super. 2020) (citation omitted). When ordering any form of custody, a court must determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to specific factors that affect the safety of the child.[2] *See* 23 Pa.C.S.A. § 5328(a).

_____

[2] In 2024, the General Assembly enacted significant amendments to the custody factors "pursuant to Act of April 15, 2024, P.L. 24, No. 8 (known as 'Kayden's Law')." *Velasquez v. Miranda*, 321 A.3d 876, 886 n.6 (Pa. 2024). Kayden's Law expanded the factors to be considered in the court's best interest analysis and required the court to give "substantial weighted consideration" to, *inter alia*, the "safety of the child." *Id.* (citation omitted). These statutory amendments took legal effect on August 13, 2024. Our General Assembly then amended Section 5328(a) again on June 30, 2025,
*(Footnote Continued Next Page)*

Relevantly, nonprofessional supervised physical custody is custodial "time during which an adult, designated by the court or agreed upon by the parties, monitors the interaction between the child and the individual with those rights." 23 Pa.C.S.A. § 5322(a).

Father's first three issues all challenge the custody order, for various reasons. Thus, we will address these issues together. Father argues that the "trial court relied on prior PFA findings and hearsay, not concrete proof, to justify more restrictive custody." Father's Brief at 6 (unnumbered). Father asserts that there was no "independent, neutral evidence of harm or abuse" to the Child. *Id.* at 7 (unnumbered). Father alleges that the court failed to weigh his "extended, positive, consistent supervised visitation over eight months, during which there were no incident reports made by any party." *Id.*

Father also argues that the trial court disregarded evidence of harm to the Child's relationship with Father and Father's positive visitation history. *Id.* at 8 (unnumbered). According to Father, he was "repeatedly obstructed from exercising visitation" by Ms. Snyder and Mother, although we note that he cites nothing in the record to support this claim. *Id.*

The trial court explained its rationale as follows:

> The court sat as fact-finder during the hearing resulting in the PFA Order in favor of Mother and against Father and in the custody trial, which means that the court was

---

with an effective date of August 29, 2025. *See* 2025 Pa. Legis. Serv. Act 2025-11 (H.B. 378). As the trial court entered the instant custody order in December 2025, the most recent statutory amendments apply to this appeal.

- 12 -

responsible for passing on the credibility of the witnesses and the weight of the evidence produced, while remaining free to believe all, part or none of the testimony and evidence presented. Here, the record discloses substantial evidence of abuse.

Less than a year before the custody trial, Mother requested a protection from abuse order against Father. After a contested hearing, the court [] "made a specific finding of abuse," finding that Father had abused Mother. This was a final Order from which no appeal was taken. Thus, the question of whether Father was abusive toward Mother is conclusively established.

After that, there was a *Kayden's Law* hearing before another judge, where the court found that Father should have supervised visitation with the Child. In addition, there were two prior PFA Orders against Father from two other women, at least one of which was granted with findings of abuse after a contested hearing. Moreover, Father has a criminal record with several convictions or pleas, most of which relate to drug and alcohol consumption or violent offenses.

Furthermore, the court received evidence and heard testimony from witnesses, as explained above. The court made weight and credibility determinations, as is its function, and found there was evidence suggesting Father was a potential danger to the Child, including evidence of his controlling behavior and frustration when he does not get his way, use of inappropriate language, and violent behavior towards others.

Accordingly, the court believes there is ample evidence to support its findings.

T.C.O. at 24-25 (footnotes omitted; several stylistic and naming convention changes made).

The trial court further explained that it: "(i) evaluated the relevant custody factors itemized in Section 5328 of the Domestic Relations Code, with

- 13 -

special evidence given to the factors pertaining to safety, as required, (ii) weighed the testimony and evidence presented by the parties in support of their respective positions, and (iii) fashioned an order the court believes best serves the Child's physical, intellectual, moral and spiritual well-being." **Id.** at 27 (some naming conventions altered).

Father's argument is belied by the record and fails to appreciate our deferential standard of review in custody matters. We must accept findings of the trial court that are supported by competent evidence of record. **See Wilson, supra**.

Here, the trial court's findings are supported by record evidence. In February 2025, the trial court entered a final PFA order on behalf of Mother and her other minor children[3] against Father. **See** Final Protection From Abuse Order, 2/11/25. The order states that it was entered after a hearing and decision by the court, and the court had "made a specific finding of abuse." **Id.** Contrary to Father's assertions, even though the PFA order was not related to the Child, it was highly relevant to the court's custody decision. Pursuant to the custody factors, the court was required to give **substantial weighted consideration** to factors affecting the safety of the Child, including "the present and past abuse committed by a party . . . which may include past or current" PFA orders "where there has been a finding of abuse." 23 Pa.C.S.A. § 5328(a)(2). Thus, the court was required to consider any present

---

[3] Mother has three other children, ages 5, 13, and 16, who are not Father's children and are not the subject of this appeal.

- 14 -

or past abuse of any type committed by Father, whether against the Child or another person. **See id.**

Additionally, Mother testified at the hearing about Father's past actions, including throwing a vacuum cleaner in the same room the Child was sleeping in, throwing "a fit" when he could not find his marijuana, and breaking her finger. **See** N.T., 12/22/25, at 149, 157-58. Mother stated that Father was "completely unstable and unpredictable" and would get "extremely paranoid." **Id.** at 158.

Contrary to Father's claims about positive visits, Ms. Snyder, a visitation supervisor, testified about Father getting flustered, frustrated, and having "meltdowns" at visits. **See id.** at 87, 89-91. She stated that it was a "rollercoaster" at the visits; sometimes Father would hold the Child and yell at Ms. Snyder and be anxious and upset, and other times Father was "pretty quiet" and mellow. **See id.** at 92. Ms. Snyder testified that Father had previously spit at her. **Id.** at 133. Ms. Snyder stated that she was suspicious that Father had been under the influence of drugs or alcohol at some visits. **See id.** at 105. There were times when Father cancelled a visit, wanted to leave a visit early, or stormed out of a visit, and his phone was often a distraction. **See id.** at 87, 91, 111, 116. Ms. Snyder had concerns about Father's mental health. **Id.** at 110, 131. The trial court expressly "found Ms. Snyder's testimony credible." T.C.O. at 27 (footnote omitted).

Father essentially asks us to reweigh the evidence and find in his favor, based on his and Mr. Horning's testimony. This we cannot do. We reiterate

that it is not this Court's role to "re-find facts, re-weigh evidence, and re-assess credibility." **Wilson**, 284 A.3d at 520 (citation omitted). It was the trial court's purview to make credibility determinations of the witnesses before it and weigh the evidence. **See id.** at 515 (citation omitted). Here, the trial court weighed all the evidence, evaluated the custody factors, and fashioned an order that it determined was in the Child's best interests.[4] **See** T.C.O. at 27, 31, 33. Because the trial court's conclusions are reasonable as shown by the evidence of record, Father's first three issues merit no relief.

In Father's fourth issue, he argues that Ms. Snyder is Mother's sister, so her "testimony and [visitation] logs were not independent or impartial." Father's Brief at 7 (unnumbered). Father claims that his "proposed neutral supervisor was never permitted, despite court approval, and the court failed to address the need for neutral supervision" or Ms. Snyder's "clear conflict." **Id.**

The trial court explained its rationale as follows:

---

[4] Although not raised by Father, we acknowledge that in the trial court's on-the-record decision, it did not specifically list factor 15, the mental and physical condition of a party or member of a party's household. However, it is clear from the record, the court's custody decision and explanation, and its Appellate Rule 1925(a) opinion, that the court considered this factor in making its decision. **See M.J.M. v. M.L.G.**, 63 A.3d 331, 336 (Pa. Super. 2013) (explaining that the "Custody Act requires only that the trial court articulate the reasons for its custody decision in open court or in a written opinion or order taking into consideration the enumerated factors . . . there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations.").

> Mr. Horning testified that he has known Father for many years and that he did not know of Father's history of violent behavior or use of alcohol and drugs. Based upon the evidence of the protection from abuse orders and Father's criminal history, the court did not find Mr. Horning knowledgeable and credible with respect to his understanding of this issue. [. . .] Based upon Father's demeanor, the court also observed that Father appeared to be having difficulty controlling his anger even in the courtroom, although Father denied being angry. Ms. Snyder testified concerning difficulties experienced with Father's visitations, and his cancellation or early termination of some of them, as well as Father's behavior. The court found Ms. Snyder's testimony credible.

T.C.O. at 26-27 (footnotes omitted; naming conventions altered).

We find Father's argument regarding the custody supervisors to be somewhat specious. The crux of his argument is that Ms. Snyder was biased, whereas Mr. Horning, his proposed supervisor, was neutral, and, thus, the court erred by keeping Ms. Snyder as a supervisor and removing Mr. Horning. However, Mr. Horning testified that he and Father had known each other for twenty-seven years, and they were childhood friends. *See* N.T. at 14, 23. Therefore, we fail to see how Mr. Horning could be considered a "neutral" supervisor, given his longstanding personal relationship with Father.

Regardless, Mr. Horning testified that Father was not violent, was fit to be a father, and that he was unaware of whether Father used drugs or alcohol. *Id.* at 14, 19. Mr. Horning was also unaware of the final PFA order against Father. *Id.* at 25. Mr. Horning testified that he did not believe that Father needed to be supervised, and he believed Father controlled his behaviors. *Id.* at 28, 32. At the end of the hearing, Mr. Horning reconfirmed that he had no

concerns with Father, and he believed Father was able to control himself. *See id.* at 161, 163.

Thereafter, the trial court expressed its concern with Mr. Horning being a supervisor. *Id.* at 185. Because Mr. Horning did not accept or recognize that Father needed supervised visits, the court was not comfortable having him supervise, nor did the court believe it was likely that he would adequately supervise. *See id.* at 186.

We again reiterate that matters of credibility were for the trial court to decide. *See Wilson, supra*. The court found Ms. Snyder to be credible, and Mr. Horning to not be credible. Based on the testimony and evidence presented, the court determined that Ms. Snyder was an appropriate supervisor, and Mr. Horning was not an appropriate supervisor. We discern no abuse of discretion. Father's fourth issue merits no relief.

In Father's final issue, he alleges that the trial court's decision was based on subjective fear and personal bias, not facts. Father's Brief at 8 (unnumbered). Father claims that the trial court's use of language such as "terrifies me," and the court's focus on Father's demeanor, texts, or stress, rather than concrete risk, was an abuse of discretion. *Id.* According to Father, reliance "on emotional risk over objective evidence is legal error and contrary to" the Child's best interests. *Id.*

We reject Father's claim of bias. The Custody Act requires the trial court to "delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). While rendering its on-

the-record custody decision, the court used the words "terrifies me." The court opined, "I have not heard anything that would lead me to believe that Father's time should not continue to be supervised. In fact, quite candidly, the thought of Father being unsupervised with this one-year-old child terrifies me." N.T. at 184. Thus, the trial court was fulfilling its statutorily mandated duty and delineating the reasons for its decision on the record, one of which was its fear about Father being unsupervised with the Child. Father's demeanor, texts, and stress were also all relevant to the court's custody decision and its evaluation of his credibility. Father has cited no evidence in the argument section of his principal brief that persuades us that the trial court was biased against him or made its decision based on anything other than the facts and evidence presented. Father's final issue merits no relief.[5]

_____

[5] Father lists another issue in his brief, "The Court Did Not Provide a Measurable Path to Expansion or Progress for Appellant," which was not included in his 1925(b) statement or his statement of the questions involved in his brief. Father also fails to adequately develop this issue by including only one sentence of argument with no citations to the record or legal authority. Thus, this issue is waived. *See* Pa.R.A.P. 1925(b)(4)(vii); ***B.S.G., supra***; Pa.R.A.P. 2116(a); ***M.Z.T.M.W., supra***. Even if we had reached the merits of this issue, Father's claim would fail. The trial court explained to Father on the record:

> Now, as far as requiring Father to get a mental health evaluation, counseling, and to take parenting classes, I'm not gonna order Father to do any of those things, but I will make clear to you, [Father], that until you get a mental health evaluation, until you've completed counseling, and until you've taken parenting classes, it is unlikely that any court will see fit to modify the order that I have just entered. But that's on you.

*(Footnote Continued Next Page)*

- 19 -

In sum, we discern no error of law or abuse of discretion upon review of the trial court's custody decision.

Order affirmed. Father's "Emergency Motion to Expedite Decision – Demand for Immediate Court Action" is denied as moot. Jurisdiction relinquished.


Judgment Entered.


_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: 07/09/2026

---

N.T. at 186.

Thus, the court explained to Father what steps it believed he needed to take to strengthen his case for a future custody modification. More importantly, although Father clearly believes he was entitled to more explicit guidance from the trial court, he cites no authority to support that proposition. Therefore, even if it were appropriately raised and preserved, this issue would merit no relief.